## GILBERT MANUFACTURING COMPANY, a Corporation, Respondent, v. WILLIS BRYAN, Appellant.

(166 N. W. 805.)

**Written contract — terms — fully stated and complete — plain and specific — prior parol contract — testimony to show — inadmissible.**

1. Where a written contract is full and complete as to all of the terms of the contract, and the terms of such contract are plain and specific, and set forth fully the subject-matter of the contract, and such written contract covers the subject-matter of the contract fully so as to be a complete contract, oral testimony is inadmissible to show a prior parol agreement entered into between the parties prior to the time of the execution of the written contract.

**Written contract — incomplete — subject-matter — not fully covered — contract partly written — partly oral — parol evidence — as to oral part.**

2. Where a written contract is not complete, and where it does not cover the whole subject-matter of the contract, where there is a part of the subject-matter of the contract not incorporated in the written agreement, oral testimony is admissible to establish such part as is not included in the written agreement; or if the contract is partly written and partly verbal, that part which is verbal may be proved by oral testimony, but in so far as the written contract covers and treats of the subject-matter and sets forth the covenants entered into and terms agreed upon, such written contract and the terms thereof cannot be varied by the introduction of oral testimony.

NOTE.—The general rule that evidence of prior or contemporaneous agreements is not admissible to contradict or vary the terms of a written contract; nor can a verbal agreement made prior to the written contract be admitted to contradict or vary the written contract,—is discussed in a note in 17 L.R.A. 273.

Written contracts — supersede oral agreements — subject-matter covered — as to.

    3. Written contracts supersede oral negotiations and prior parol agreements so far as the subject-matter of the contract is covered and included within such written contract.

Subject-matter — all substantially covered — written contract — will be given effect — fraud — mistake — absence of — effect given to.

    4. Where a written contract is entered into between the parties, which substantially covers all the subject-matter of the contract, and one of the parties, in resisting the legal effect of such written agreement, undertakes to set up a prior contemporaneous oral agreement made at or prior to the time of the execution of the written agreement, in the absence of fraud, delusion, or false representations which induced the signing of the contract, or unless the contract was signed by mutual mistake of law of both of the parties, or a misapprehension of the law by one party of which the other party was aware at the time of the making of the contract, which was not rectified, the written contract will be given effect, and oral testimony is not admissible to vary its terms or the meaning thereof.

Opinion filed February 6, 1918.

Appeal from the judgment of the District Court of Burleigh County, and from an order overruling a motion for a new trial, Honorable, W. L. Nuessle, Judge.

Affirmed.

*Theodore Koffel,* for appellant.

Where it is claimed that the contract is partly in writing it is proper to show prior oral statements and representations not in conflict with the written portions. Hanley v. Chicago, M. & St. P. R. Co. 154 Iowa, 60, 134 N. W. 417.

Parol evidence is admissible to show prior or contemporaneous collateral agreements between the parties, though a written contract was entered into. Clare County Sav. Bank v. Featherly, 173 Mich. 292, 139 N. W. 61; Kempsy v. Metcalf, 61 Iowa, 320, 16 N. W. 146; Coit v. Churchill, 61 Iowa, 296, 16 N. W. 147.

It is also permissible to show that at the time the writing was made it was agreed between the parties that the same should not take effect until the happening of some stated contingency. McCormick Harvesting Mach. Co. v. Richardson, 89 Iowa, 525, 56 N. W. 682; Manu-

facturers' Furnishing Co. v. Kremer, 7 S. D. 463, 64 N. W. 528; Hinsdale v. McCune, 135 Iowa, 682, 113 N. W. 478.

Under a blank indorsement of a promissory note, it is competent to show by parol evidence a different contract than that implied by law. Geneser v. Wissner, 69 Iowa, 119, 28 N. W. 471.

It is competent to show by parol evidence the amount that several joint makers should each pay under a mortgage (Comeau v. Hurley, 24 S. D. 275, 123 N. W. 716); or that the price agreed to or paid for goods is different from that shown in the invoice (Edwards & McC. Lumber Co. v. Baker, 2 N. D. 289, 50 N. W. 718); or where the written memorandum is different it is competent to show the actual agreement (Hendrix v. Letourneau, 139 Iowa, 451, 116 N. W. 729; Norris v. Clark, 33 Minn. 476, 24 N. W. 128).

It is error to refuse a party the right to offer evidence in rebuttal of incompetent evidence allowed to remain of record before the jury, or to limit cross-examination to test the witness's memory. Ingram v. Wackernagel, 83 Iowa, 82, 48 N. W. 998; Julius King Optical Co. v. Treat, 72 Mich. 599, 40 N. W. 912; People v. Hare, 57 Mich. 505, 24 N. W. 843; Rhomberg v. Avenarius, 135 Iowa, 176, 112 N. W. 548; Plano Mfg. Co. v. Bergmann, 102 Wis. 21, 78 N. W. 157.

Evidence received without objection cannot be stricken out on motion after witness has been fully examined. De Laval Separator Co. v. Sharpless, 142 Iowa, 60, 120 N. W. 657.

An answer that is not responsible to a question should be stricken out. Davis v. Holy Terror Min. Co. 20 S. D. 399, 107 N. W. 374; Latman v. Douglas & Co. 149 Iowa, 699, 127 N. W. 661; Chase v. Woodruff, 138 Wis. 641, 120 N. W. 499; H. C. Behrens Lumber Co. v. Lager, 26 S. D. 160, 128 N. W. 698, Ann. Cas. 1913A, 1128.

No issue should be submitted to the jury unless there is evidence to support it. State v. Dahms, 29 N. D. 51, 149 N. W. 965; State v. Hall, 28 N. D. 649, 149 N. W. 970.

Instructions should not ignore material issues. Thompson v. State, 61 Neb. 210, 85 N. W. 62; Slingerland v. Keyser, 127 Mich. 7, 86 N. W. 390; Anderson v. Roberts, 112 Iowa, 749, 84 N. W. 928; Strong v. State, 61 Neb. 35, 84 N. W. 410.

An instruction based on an assumed state of facts, and of which no evidence has been introduced, was error. Eggett v. Allen, 106 Wis.

633, 82 N. W. 556; State v. Swallum, 111 Iowa, 37, 82 N. W. 439; Conrad v. Kelley, 106 Wis. 252, 82 N. W. 141; Bockoven v. Lincoln Twp. 13 S. D. 317, 83 N. W. 335; Locke v. Priestly Exp. Wagon & Sleigh Co. 71 Mich. 263, 39 N. W. 54; Whitsett v. Chicago, R. I. & P. R. Co. 67 Iowa, 150, 25 N. W. 104; Templin v. Rothweiler, 56 Iowa, 259, 9 N. W. 207.

The verdict of the jury to be warranted must be founded on reasonable certainty, and must appear to have been reached by a fair consideration of the evidence, and not upon conjecture or surmise or guesswork. It must be sustained by established facts. Samulski v. Menasha Paper Co. 147 Wis. 285, 133 N. W. 142; Spencer v. Chicago, M. & St. P. Ry. Co. 105 Wis. 311, 81 N. W. 407, 7 Am. Neg. Rep. 364; Poels v. Brown, 78 Neb. 783, 111 N. W. 798; Kraczek v. Falk Co. 142 Wis. 570, 126 N. W. 30; Hodson v. Wells & D. Co. 31 N. D. 395, L.R.A.1915F, 958, 154 N. W. 193; Russel v. Rosenbaum Bros. 24 Neb. 769, 40 N. W. 287.

Immaterial and irrelevant testimony admitted over objection, and having a tendency to influence or mislead the jury, furnishes good ground for a new trial. Harrison v. Baker, 15 Neb. 43, 14 N. W. 541; Tunell v. Larson, 37 Minn. 258, 34 N. W. 29.

When it appears from the record that a fair trial has not been had and justice has not been done, a new trial should be granted. Finney v. Northern P. R. Co. 3 Dak. 270, 16 N. W. 500; Barrett v. Wheeler, 71 Iowa, 662, 33 N. W. 230; D. M. Osborne & Co. v. Carpenter, 37 Minn. 331, 34 N. W. 163; Doyle v. Burns, 138 Iowa, 439, 114 N. W. 1; Putnam v. Prouty, 24 N. D. 517, 140 N. W. 93; Parry Mfg. Co. v. Tobin, 106 Wis. 286, 82 N. W. 154.

Where it is probable to think that the newly discovered evidence will produce a different result upon a new trial it should be granted. City Sav. Bank v. Carlon, 87 Neb. 266, 127 N. W. 161; Hawk v. Mulhall, 133 Iowa, 695, 110 N. W. 1026; Hunt v. Tuttle, 133 Iowa, 647, 110 N. W. 1026; Brooke v. Byrnes, 133 Iowa, 697, 110 N. W. 1028.

*Newton, Dullam, & Young,* for respondent.

Written contracts supersede all oral negotiations. The execution of a contract in writing, whether required by law or not, supersedes all oral regulations or stipulations concerning the matter which preceded or accompanied the execution of the instruments. Comp. Laws 1913,

§ 5889; Putnam v. Prouty, 24 N. D. 517, 140 N. W. 93; American Case & Register Co. v. Walton & D. Co. 22 N. D. 187, 133 N. W. 309; Ricck v. Daigle, 17 N. D. 365, 117 N. W. 346; Reeves v. Bruening, 13 N. D. 157, 100 N. W. 241.

"Parol evidence is not admissible to show that the contract is different from that contained in the accepted offer." Johnson v. Kindred State Bank, 12 N. D. 336, 96 N. W. 588; National German American Bank v. Lang, 2 N. D. 66, 49 N. W. 414; Northwestern Fuel Co. v. Bruns, 1 N. D. 137, 45 N. W. 699; Harney v. Wirtz, 30 N. D. 292, 152 N. W. 803.

The rule is that a new trial will not be granted on the ground of newly discovered evidence when such evidence was not produced at the former trial because it had been forgotten, or where the defendant did not use due diligence. Upton v. Levy, 39 Neb. 331, 58 N. W. 95; Jackson v. Grinnell, 144 Iowa, 232, 122 N. W. 911; First Nat. Bank v. Union Trust Co. 158 Mich. 94, 133 Am. St. Rep. 362, 122 N. W. 547; Butterfield v. Beaver City, 84 Neb. 417, 121 N. W. 592.

Such evidence must also be relevant and material. Braithwaite v. Aiken, 2 N. D. 57, 49 N. W. 419; Fisk v. Fehrs, 32 N. D. 119, 155 N. W. 676.

The granting of a motion for a new trial on such ground is largely within the discretion of the trial judge, and his decision thereon will not be disturbed except in case of clear abuse. Fisk v. Fehrs, supra; Aylmer v. Adams, 30 N. D. 514, 153 N. W. 419.

GRACE, J. Appeal from the judgment of the district court of Burleigh County, and from an order overruling a motion for a new trial.

The complaint states an action for recovery upon a promissory note bearing date December 4, 1914. The note is for the sum of $218, with interest at 10 per cent. The complaint admits the payment of $130, and claims a balance due upon said note of $107.37.

The answer admits that the defendant is a foreign corporation, and also interposes a general denial, and then sets up the following defense to such note: "That plaintiff and defendant entered into an agreement whereby defendant was to receive into his possession and put up or construct certain galvanized corrugated grain bins manufactured by the plaintiff, and plaintiff was to sell such grain bins to the public after

39 N. D.—2.

having been so assisted by the defendant; and thereupon, at the special instance and request of the plaintiff, and as an evidence of good faith on his part, the defendant executed and delivered the said note, without consideration, and solely for the accommodation of said plaintiff, and upon plaintiff's promise to sell such grain bins and release defendant from liability upon the note, and to compensate the defendant for his labor and services therein.

"That thereafter the plaintiff sold the said grain bins from the proceeds of which the sum of $130 has been indorsed upon said note as a payment.

"That the plaintiff is not a bona fide holder of the note in suit for a valuable consideration, but received the same with notice of the foregoing facts, and without paying any consideration therefor."

The defendant for a counterclaim states that, prior to the execution and delivery of the note described in the complaint, plaintiff and defendant entered into an agreement whereby plaintiff was to consign to defendant certain knocked down, galvanized corrugated grain bins, and defendant was to receive the same into his possession, and plaintiff was to sell the same to the public; and defendant agreed to construct or put them up, for and in consideration of the compensation hereinafter mentioned. That according to the terms of said agreement defendant received into his possession certain grain bins consigned to him by plaintiff, and defendant paid the freight charges thereon in the sum of $27, no part of which has been paid, except as hereinafter stated. That according to the terms of said agreement, defendant constructed and put up three of said grain bins, for which services, according to the terms of said agreement, the plaintiff agreed to pay the sum of $30 per bin, or a total sum of $90, no part of which has been paid except as hereinafter mentioned. Defendant further states that the plaintiff, in connection with the selling and delivering of such grain bins, and in collecting pay for same, hired from the firm of Bryan & Son, of Bismarck, North Dakota, certain automobiles and drivers for which plaintiff agreed to pay said Bryan & Son the reasonable value for the use and service thereof, which was and is the sum of $75. Then follows an allegation of the assignment of such claim of Bryan & Son to the defendant. The defendant claims by reason of such counterclaim $27 due for freight, $90 for putting up or constructing the bins, and $75

for hire of automobiles and drivers, and claims that no part of the said sums has been paid except $125, and claims a balance due from the plaintiff in the sum of $67.

To this answer and counterclaim the plaintiff interposed a reply, the substance of which is that on the 5th day of August, 1914, at Bismarck, North Dakota, the plaintiff and defendant entered into two certain sale contracts and orders in writing in and by which plaintiff sold to defendant, and the defendant bought of the plaintiff, three certain 1,000-bushels capacity Dakota-Montana special grain bins, at the price of $105 each f. o. b. Aberdeen, South Dakota, and two pair of channel irons for partitions; that thereafter, in pursuance to said written sale contracts and orders, the plaintiff delivered to said defendant at Aberdeen, South Dakota, said three grain bins and two pair of channel irons for partitions. Thereafter, on October 24, 1914, the defendant paid the plaintiff the sum of $105 upon said contracts; and thereafter, on the 4th day of December, 1914, the defendant, in pursuance of the terms of said contracts hereinbefore mentioned, executed and delivered to the plaintiff the note sued upon and described in the complaint herein, which note was given as a settlement of the amount due plaintiff from the defendant under said contract; that in and by said agreement, among other things, it was agreed that the defendant should sell in the territory of Bismarck and vicinity the grain bins manufactured by the plaintiff and mentioned in said agreement, and was also to set up any grain bins sold by him to the farmers in said territory, and not to leave same to be set up by the farmers, and guaranteed to erect the bins in a first-class and workmanlike manner and place anchors in the ground, put in all bolts, and to do any necessary work to make the bins perfect when turned over to the farmer. That the said channel irons for partitions were of the reasonable worth and value of $8; and that they were settled for between plaintiff and defendant at such price of $8.

Plaintiff, further replying, denies each and every allegation, matter of fact, and thing set forth and alleged in said counterclaim except as hereinbefore admitted or qualified, and specifically denies that it is indebted to the firm of Bryan & Son in the sum of $75 or any other sum or amount whatever, or that it ever hired any automobiles and drivers, or either, from said Bryan & Son.

The foregoing reply contains the language which substantially sets

forth the covenants and agreements contained in the written contracts entered into by and between plaintiff and defendant, and, as offered in the testimony in this case, are respectively marked exhibits B and C.

It appears that one of the grain bins had been paid for by the defendant in the sum of $105, and the remaining two bins each $105 plus $8 for the channel irons, in all the sum of $218, is represented by exhibit A, the promissory note in question executed and delivered by the defendant to the plaintiff. We have set out in substance all the pleadings, for the merest inspection of the case determines there is an oral contract relied upon by the defendant, claimed to have been entered into prior to the execution of the written contracts, exhibits B and C, and prior to the delivery of the note in question. The defendant, while not denying the execution of the written contracts, exhibits B and C, claims that contemporaneously with the execution of such written contracts it had an oral agreement with the plaintiff through its agent McKenzie, which is fully set out in defendant's answer. The merest inspection also further determines that the agreements and covenants set forth in defendant's answer, and relied upon by him as a defense against payment of the note, are entirely inconsistent with and opposed to the terms of the written instruments, exhibits B and C, which was the agreement and contract in writing entered into prior to the execution of the note, and which written agreements and contracts are claimed to cover all the agreements and covenants between the parties with reference to the subject-matter, and which are claimed to have been executed and delivered after all negotiations were had with reference to the subject-matter of the contracts. It is apparent that the terms of the alleged oral agreement are so in conflict with the written contracts, and the oral agreement, if given its full meaning, so varies the terms of the written contracts, that the alleged oral agreement and the written contracts cannot stand together. If the oral agreement contended for by the defendant is to be given full force and effect, then the written contracts must fail. The purported oral agreement is not such as relates to some matter or part of the subject-matter upon which the written contract is silent. Neither is the purported oral agreement one which is sought to be proved in order to explain any of the terms or parts of the written contract. Either the alleged oral agreement must be accepted and proof allowed of it, or it must be entirely rejected and testimony tending to

establish the oral agreement must be rejected as incompetent, irrelevant, and immaterial and having a tendency to vary the terms of a written instrument.

The appellant assigns fifty-two errors. In his discussion of such errors the appellant has grouped them into four divisions. The first includes all errors from 1 to 37 inclusive and relates to the exclusion of evidence at the trial over the objection of defendant's counsel. Most, if not all, of the evidence thus excluded related to the effort of the defendant to introduce testimony to prove his alleged oral agreement. Timely objection was made to such evidence, and it was ruled out by the trial court upon the theory that all of such evidence tended to vary the terms of the written contracts admittedly signed and executed by the defendant. In this we think there was no error on the part of the court. The written contracts in question are full, complete, and comprehensive, and deal fully with the subject-matter of the contracts. Such written contracts specify that they are entered into between plaintiff and defendant at Baldwin, North Dakota. They specify the price of bins of different capacity. They specify that the bins purchased by the defendant are to be paid for in cash or before the 1st day of October, 1914, and, if they are not paid for, then the amount should draw interest at 10 per cent, and the defendant was to execute and forward to the company bankable notes for the purchase price of the grain bins. The defendant also agreed not to handle any other grain bin of a competitor company during the life of his contract. He agreed to set up any grain bin sold by the defendant to the farmers in the territory, and not to leave the same to be set up by the farmer, and agreed to erect the bins in a first-class and workmanlike manner, put in anchors in the ground, and put in elbows, and do any necessary work to make the bin perfect when the same was turned over to the farmer. The defendant agreed in said written contract that all grain bins purchased by him during the season were to be purchased under the agreements contained in the written contract. The price of the grain bins to the defendant was f. o. b. Aberdeen, South Dakota. This contract is executed on the 5th day of August, 1914, by the plaintiff and defendant. There is no allegation of fraud in the signing or procuring of the signing and execution of the contract. It is a plain, full, and complete contract with reference to the subject-matter it covers. There is nothing contained in the contract

that needs any explanation. The terms are fully stated. The testimony offered by the defendant was such as would have varied the terms of those written instruments, and was very properly excluded, and in fact it would have been prejudicial, reversible error not to have excluded it. It is a rule well settled in the jurisprudence, not only of this state, but of this country, and jurisprudence generally, and is a general rule, that oral testimony cannot be introduced where it tends to vary the terms contained in the written instrument. Especially is this true where the written instrument is full and complete, and covers and sets up the terms and conditions of the agreement fully, and treats and deals fully with the subject-matter of the contract. Under the testimony as sought to be offered in support of defendant's alleged oral agreement, it appears evident that all such testimony sought to be offered related to negotiations at or prior to the time of the execution of the written contracts; and the alleged oral agreement being entirely repugnant to the written agreement, all such testimony was properly rejected.

It is a well-settled rule that oral testimony cannot be introduced to vary the terms of a written contract. The alleged oral agreement relied upon by the defendant and set forth in his answer as part of his defense, and again set forth in his counterclaim, is entirely different from the written contract. Section 5889, Comp. Laws 1913, reads as follows: "Written contracts supersede oral negotiations. The execution of a contract in writing whether the law requires it to be written or not supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument." The language of this section appears to be perfectly plain and is easily understood. It would seem that this is a most salutary rule of law, the intent of which is to add certainty to business transactions, and to afford a means whereby positive proof of the agreements of parties may be had. A written contract is a protection against the inability of the mind to retain all that was said and done concerning the terms contained in the contract. They protect one against the lapse of memory, and retain the terms of the contract as made, thus affording a safe receptacle to which the mind may return and be refreshed as to the actual terms of the contract. South Dakota has a statute on this subject similar to the section of the North Dakota Compiled Laws of 1913 just above set forth. In the South Dakota case of DeRue v. McIntosh, 26 S. D. 47, 127 N.

W. 532, the following language is used: "This provision of our Code embodies the common-law rule upon the subject of written contracts; and, while 'the execution of a contract in writing, whether the law requires it to be written or not, supersedes all of the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument,' nevertheless, as contended by the appellant, there are exceptions to the rule. And one of the exceptions seems to be that agreements or representations made prior to the written contract under which the party was induced to sign the contract may be shown; in other words, where the parol contemporaneous agreement was the inducing and moving cause of the written contract, or where the parol agreement forms part of the consideration for the written contract, and where he executed the written contract upon the faith of the parol contract or representation, such evidence is admissible."

This language was quoted with approval in the case of Erickson v. Wiper, 33 N. D. 206, 157 N. W. 592. To support this contention, cases from several states are cited in the South Dakota case. The South Dakota case was one where the plaintiff agreed to construct for the defendant a flowing well on defendant's farm. The agreement was reduced to writing, and the supreme court of South Dakota, in analyzing a part of said written contract, used the following language: "It will be observed that the contract in this case provides that the plaintiff shall drill a flowing well on the terms and conditions specified, and drill and sink same to an artesian flow if possible, granitical formations excepted. The amount of water that should be discharged from such well is not provided for in the contract." The defendant in the South Dakota case served an amended answer in which he alleged that at the time of the making of the contract for the construction of said well, the defendant was the owner of a large tract of land upon which said well was to be drilled. That said land was used and designed to be used as a stock range, whereon the defendant kept and intended to keep a large number of cattle and horses, and that the sole object and purpose in drilling and constructing said well was to procure a flowing well to furnish sufficient water for said stock, all of which was well known to the plaintiff. In his original answer the defendant in the South Dakota case alleged that plaintiff abandoned said well before he drilled the same to the artesian flow, and failed, neglected, and refused to drill the same

to said artesian flow, although it was and is possible to drill a well to said artesian flow on defendant's land; that plaintiff failed to secure a flowing artesian well, and that said well as drilled and left by plaintiff is without value and utterly useless to the defendant. We have no doubt the South Dakota supreme court was right in stating the defendant in that case should have been allowed to have introduced his amended answer. Under such amended answer the defendant introduced testimony to explain certain terms of the contract, which, as found in the contract, were not readily understood, such as the term "flowing well." So, likewise, if any other term of the contract was uncertain in its meaning, might there be introduced testimony to show the actual and real meaning of the term. The meaning of the term "flowing well" could have likewise been determined by the testimony of other persons familiar with and having knowledge of what a flowing well really is. If there was a parol agreement that the particular well should have a certain capacity, such as to furnish water for all the stock of defendant on his large farm, all of which was in contemplation and referred to in the parol agreement, if any, then such parol agreement was concerning a matter which was not included in the written contract, and it would have been perfectly proper to have introduced testimony concerning a part of the subject-matter not embraced in the written contract. We are of the opinion that the rule is well settled that where the terms of a written contract are vague or uncertain, testimony may be introduced to explain such terms and explain the true meaning of them; and also where an agreement is partly written and partly in parol, that part which is in parol and is not mentioned or covered in the written contract may be proved by competent testimony. In the South Dakota case under consideration, the written contract was silent on the capacity of the well to produce a certain amount of water in contemplation by both parties at the time of the execution of the written contract. Surely it was proper to permit the defendant to plead and prove by parol agreement that it was understood and agreed, and that it was part of the contract, though not included in the written contract, that the flowing well should be one of such capacity as to furnish a sufficient supply of water for use on the defendant's said farm for the amount of stock which were to be kept upon such farm. But the pleading and proof of a parol agreement relating to a part of the subject-matter of the contract, and

which was agreed upon at the time of the understanding and agreement of the parties, with reference to the whole subject-matter of the contract, but which particular subject-matter was inadvertently overlooked, and the parties had neglected to incorporate it in the written contract so that, while such part of the subject-matter was agreed upon, yet it was not incorporated in the written contract, is an entirely different matter from the submission of proof which seeks to change some of the terms of the written contract; or which proof tends to establish a parol contract whose terms are materially different from the terms of the written contract. A written contract should be exclusive evidence of the agreement made and contained therein so far as it deals with all the subject-matter of the contract, unless such contract is procured through fraud, either actual or constructive, undue influence, restraint, deception, in a dishonest manner, or by false representations which induce the signing of the contract; or unless there is a mutual mistake of law by both parties, a misapprehension of the law by one party of which the other party was aware at the time of making the contract, which was not rectified, or some other illegal manner. There must have been some very good reason in the contemplation of the legislature in passing the statute to which we have before referred. The reason must have been that experience must have proved that very frequently, though one had a contract in writing covering the subject-matter of the contract, that it was permissible before the passage of such statute to plead and be allowed to give proof of a parol agreement relative to the same subject-matter claimed to be entered into contemporaneously with the execution of the written contract, and, to avoid the evil arising from such condition, the statute in question was passed in order to cut off and prevent such procedure. The legislature in enacting the statute in question made it possible to have a certain method by which the terms of the contract could be preserved so that they could not be disputed by either party, or so that it could not later be claimed that the terms of the contract were different from what they were at the time the contract was made. The rules of evidence which prevent the introduction of oral testimony to vary the terms of a written instrument, and the rule of evidence which prevents the reception of oral testimony of conversations and negotiations prior to the time of the execution of the written contract, are salutary rules, adopted by the courts for the purpose of pre-

serving the rights and agreements of parties when reduced to writing and signed by them.

So far as the written contract in this case is concerned, it is full, fair, and specific in setting forth the terms of the contract. The written contract was one signed by the plaintiff and the defendant, whereby the defendant purchased certain grain bins upon certain terms and conditions specified in the written contract. Such contract was duly executed by both parties. All testimony introduced or sought to be introduced for the purpose of showing a prior contemporaneous oral contract with reference to the same subject-matter treated in the written contract was properly excluded by the court, as was other testimony which tended to vary the terms of the written contracts in this case, exhibits B and C. Referring to assignments of error 38 to 42, which have reference to alleged errors in the court's instructions, we find no error in such instructions. There was no error in the court receiving the verdict of the jury and entering judgment in favor of the plaintiff. The defendant's motion for a new trial was properly denied. The verdict of the jury is sufficiently supported by the evidence.

With reference to the counterclaim in all its parts or subdivisions, including the livery hire of auto rigs and the drivers thereof, all of such matters and all matters in the counterclaim were questions of fact submitted to the jury and by them determined against the defendant. The finding of the jury upon these questions of fact is conclusive.

The order overruling the motion for a new trial and the judgment appealed from are affirmed, with costs.

CHRISTIANSON, J. I concur in result.

ROBINSON, J. (concurring specially). On December 4th, defendant made to plaintiff a promissory note for $218, with interest at 10 per cent. Payment of $130 was made October 1, 1915. For the balance, with interest, amounting to $107.35, the jury found a verdict against defendant, and he appeals.

The defense is that defendant arranged with the plaintiff to receive and set up certain of its galvanized grain bins, and as evidence of good faith he gave the note without any consideration. As the evidence shows, the plaintiff is a manufacturer of grain bins at Aberdeen, South Dakota.

The retail price of a grain bin is $135. Defendant gave the plaintiff a written order for three grain bins, to be shipped to him from Aberdeen, at $105 a bin f. o. b. The bins were duly shipped and received by the defendant, and each bin was sold by him with the aid of one McKenzie, an agent of the company. One bin was sold to Christianson, and he paid $130, which is indorsed on the note. One bin was sold to Mr. Andahl, and defendant received the price, $125. One bin was sold to Lundeen, and he paid $130, and defendant received the money. Thus, according to the testimony of the defendant himself, he has received the price of the three bins,—$130 from Christianson, $130 from Lundeen, and $125 from Andahl. (30, 31.) The note for $218 was given for the wholesale price of two bins at $105 each, making $210, and some irons amounting to $8.

The defense is a pure and manifest sham, and it well deserves a severe rebuke.

Judgment affirmed.