**HARTFORD ACCIDENT AND INDEMNITY COMPANY, Plaintiff and Respondent,**

v.

**Grace ANDERSON, Defendant and Appellant.**

**Nos. 8458, 8458A.**

Supreme Court of North Dakota.

Jan. 11, 1968.

Rehearing Denied Jan. 31, 1968.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for appellant.

Zuger, Zuger & Bucklin, Bismarck, for respondent.

ERICKSTAD, Judge.

Hartford Accident and Indemnity Company, which we shall hereafter refer to as Hartford, brought two actions against Mrs. Grace Anderson to recover under the terms of a general indemnity agreement for funds it paid out in connection with liability incurred on two contract bonds written for her former husband, Ray Anderson. The cases were consolidated for trial before the court without a jury and resulted in two

judgments in favor of Hartford in the amounts of money paid out on the two bonds.

Mrs. Anderson has appealed from both judgments, asking a trial de novo in this court.

She concedes that she signed the indemnity agreement upon which these two actions are based but asserts that her husband, at the request of Hartford and thus as its agent, requested her to sign it; that she signed it without reading it and only after she had been informed by her husband that it was a bond and that he needed her signature so that he might bid a particular job; that in signing it she relied on her husband's representation that it was a bond for a particular job; that she did not deliver the agreement to Hartford after signing it nor authorize her husband to deliver it to Hartford; that she at no time acknowledged her signature before a notary public or a disinterested witness, whereas the indemnity agreement required such a witness and such an acknowledgment; and that for these reasons the agreement should be of no effect and she should be freed from any liability to Hartford.

Under the terms of the indemnity agreement the Andersons were obligated to indemnify Hartford for funds it was required to pay out in connection with bonds issued on Mr. Anderson's behalf. The agreement was dated August 28, 1957, and covered bonds issued to Mr. Anderson before that date as well as afterward. This litigation involves bonds which were written for Mr. Anderson on July 1, 1962, and April 11, 1963.

At the end of the agreement after the recitation of the instrument that the undersigned had duly executed the document and before the space provided for the signatures appears the following:

NOTE: Each undersigned's address must be given, and each undersigned's signature must be witnessed by at least one disinterested person.

The Principal named in the Bond must always join with the Indemnitors in the execution of this agreement, all signatures to be sworn to in the spaces provided below.

The trial court found that Mrs. Anderson had not acknowledged her signature before a notary, although the indemnity agreement asserts that she appeared before Mr. Roy L. Herhusky, a notary public of Stark County (and agent for Hartford), and acknowledged that she executed the agreement. The court concluded that the requirement that the signatures must be witnessed by disinterested persons and be acknowledged before a notary public was for the benefit of Hartford and therefore could be waived by Hartford. It accordingly ruled in Hartford's favor.

■ Before we may consider Mrs. Anderson's contentions, we must meet Hartford's argument that the trial court erred in accepting evidence of what Grace Anderson was told by her husband Ray Anderson as to the contents of the document and the negotiations leading to its signature. It is Hartford's view that receipt of this testimony constituted the receipt in evidence of parol evidence to vary the terms of a written agreement, which it asserts is prohibited by N.D.C.C. Sec. 9–06–07. In support of its position that parol evidence should not have been received in this case, Hartford refers us to Hanes v. Mitchell, 78 N.D. 341, 49 N. W.2d 606 (1951), and to Oliver-Mercer Electric Cooperative, Inc. v. Fisher, 146 N. W.2d 346 (N.D.1966).

There is much in *Hanes* to support the court's position under the facts of that case. It is interesting, however, that although the court confirmed the trial court in rejecting parol evidence of a prior oral agreement in *Hanes*, it quoted with approval an earlier opinion as follows:

"A written contract should be exclusive evidence of the agreement made and contained therein so far as it deals with all the subject-matter of the contract, unless

such contract is procured through fraud, either actual or constructive, undue influence, restraint, deception, in a dishonest manner, or by false representations which induce the signing of the contract, or unless there is a mutual mistake of law by both parties, a misapprehension of the law by one party of which the other party was aware at the time of making the contract, which was not rectified, or some other illegal manner."

Hanes v. Mitchell, 78 N.D. 341, 49 N.W.2d 606, 608–609 (1951), quoting Gilbert Mfg. Co. v. Bryan, 39 N.D. 13, 166 N.W. 805, 808 (1918).

In *Hanes* fraud was not alleged and the offer of proof was found insufficient to establish alleged mistakes of fact and law.

An examination of *Oliver-Mercer* discloses that it also may be distinguished on its facts, as fraud was not alleged in that case either.

■■ It is our view that the trial court was correct in receiving parol evidence in the instant case under the rule expressed in Carufel v. Kounts, 60 N.D. 91, 232 N.W. 609, 611 (1930).

"The parol evidence rule does not become applicable unless the parties have assented to a certain writing or writings as the statement of a contract between them. Accordingly it * * * may be shown by parol evidence that a writing was never executed or delivered as a contract, or that assent thereto was impaired by fraud, illegality, duress, mistake, or failure of consideration, rendering the contract void or voidable. * * *" Williston on Contracts, § 634.

Carufel v. Kounts, supra.

Some crucial facts and pertinent testimony follow:

Mr. Herhusky, Hartford's agent at Dickinson, received the general indemnity agreement from Hartford's Minneapolis office with instructions that it should be executed by both Mr. and Mrs. Anderson and returned to the home office. He stated that the company informed him that it was necessary that both husband and wife sign the agreement because the financial statement disclosed that each owned separate property. He said that Hartford had issued bonds to Ray Anderson individually before the time that Hartford solicited the execution of the general indemnity agreement, and that after securing the general indemnity agreement they continued to issue bonds to Mr. Anderson.

Mr. Anderson testified by deposition that he brought the general indemnity agreement from Mr. Herhusky's office in Dickinson to his home in Bismarck, where he asked his wife to sign it. He said that she became very angry when he asked her to sign the agreement and that she did not sign it at that time, but that he left the house and when he returned he found the signed agreement lying on the kitchen table. He said that thereafter he placed the agreement in an envelope and mailed it or took it to Mr. Herhusky at Dickinson.

Part of Mr. Anderson's testimony relating to what was said and what happened when he asked his wife to sign the agreement follows:

Q. * * * Can you tell me what you told her and how this got signed up?

A. Well, I told her, "Roy says to sign this thing. I've got to get this thing straightened out right now because we've got to have bonds," and she got madder than the devil and said, "I don't want to have nothing to do with this bond business," and that was all right now. So— but later she did sign it and I sent it back.

* * * * * *

Q. Did she sign it in front of you?

A. No.

Q. How did she sign it then?

A. It laid there on the table and she went to work, very angrily, and then I

come home later on in the day and it was signed and I just stuck it in an envelope. If I remember right, I don't think I brought it in an envelope. If I remember right, I don't think I brought it up to Roy; I think I just stuck it in an envelope and sent it up to him. That's what it amounted to.

Mr. Anderson's explanation of the reason for the necessity of his wife's signature is disclosed by the following testimony:

Q. Was the reason for having your wife sign this indemnity agreement because your cash position wasn't strong enough at the time?

A. That was the reason of it, yes, because I didn't have enough capital or enough to—I didn't look too good, and Roy says we needed more help along the line.

Mrs. Anderson testified that Mr. Anderson, when he submitted the indemnity agreement to her for her signature, informed her that it was a bond so that he could do a job.

Part of her testimony in that respect reads as follows:

A. I was ready to go to work and he handed me this—he laid this down on the table and he said that he wanted me to sign this bond so he could do a job, and I refused to sign this bond. We both got angry at each other and he told me I wasn't much of a wife that wouldn't do this because he had to have this bond to do this job and I said, "Yes, I would like to have you do this job," and we both got angry and he said, "All you have to do is put your signature on here," and I signed it. Then he said, "Well, now, this has to be notarized," and I said, "The hell with it. I will not notarize it," and he said, "I don't need it then." When I come home it was gone. He went to work.

On cross-examination counsel read from Mrs. Anderson's deposition given before trial and inquired whether she made the statements contained therein:

Q. Well, do you recall reading anything that said that there had to be at least one witness?

A. He told me that. As far as I remember, he told me I had to have a witness and I had to have this notarized, and I said, "I refuse," and he said, "Well, I don't need it then."

Q. After he said, "I don't need it then," then what was done with the agreement?

A. I signed it and I went to work.

Q. Now, you did tell us that at that time, is that correct?

A. I would presume that would be correct. I know he asked me to notarize this before a witness and I refused that.

Q. Then you signed it and left it on the table and went to work, is that correct?

A. I went to work.

Q. Now, is it also correct that you didn't read this document at all?

A. I did not read it.

Q. You did not read one scintilla of it?

A. No.

Q. But when you signed it you signed it with the intent that you were helping your husband, didn't you?

A. He needed this bond and I signed it with the intent that it would be of help.

Q. Now, when you came back you assumed from the fact that it was gone that Mr. Anderson used this bond or had taken it wherever it was supposed to go, is that correct?

A. I didn't figure that he used it. He told me he didn't need the damn thing so I don't know what had become of it. I never gave it another thought.

* * * * * *

Q. What did you assume had been done with the agreement?

A. Well, I just assumed that it would follow procedure and—I'm not affiliated

with that type of business enough to know what steps were taken.

On redirect examination Mrs. Anderson testified as follows:

Q. Insofar as you were concerned, when he said to you, "I don't need it," then what did that mean to you?

A. He felt that this had to be notarized and he asked me to have it notarized and I refused and he swore a little bit and said, "I don't need it," so I actually believed it wasn't in use. I didn't even know if he would get his bond.

She testified regarding her education and business experience that she had a high school education and three months of teachers college training; that she was the manager of Buttrey's ladies' ready-to-wear store in Bismarck for twelve years; and that before that she managed the Buttrey's store in Dickinson for one and one-half years.

Hartford contends that even if this court should conclude, which it does not concede, that Mrs. Anderson signed the agreement relying on the fraudulent representations of her husband, because Hartford did not participate in or have knowledge of the fraud, its rights cannot be affected by it. In other words, it is an innocent party and thus protected by the rule embodied in N.D.C.C. Sec. 31–11–05(34), which reads as follows:

When one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer.

In Security Nat'l Bank of Fargo v. Andrews, 53 N.D. 328, 205 N.W. 732 (1925), defendants Andrews and Aarhus, who were engaged in the newspaper business and wanted to buy a linotype, applied to the plaintiff bank for a loan of $1,500. The bank refused to lend them the money unless they procured a written guaranty of payment of the loan. Andrews and Aarhus then obtained from the bank the form of guaranty required and set forth to secure the guarantors. In so doing they went to certain other defendants and told them that they wanted to buy a linotype; that they needed $1,500 for that purpose; and that they could not borrow that amount unless they had satisfactory guarantors. On being asked to sign the guaranty, the other defendants did so and delivered it to Andrews and Aarhus with the condition that it should not be used until fourteen or fifteen other guarantors had likewise signed. When Andrews and Aarhus had procured nine guarantors, they went to the bank and presented the guaranty. Without knowledge of the condition imposed by the signers as to the number of signatures to be obtained, the bank lent to Andrews and Aarhus $1,500, which was not paid when due. In subsequent suit the defendants who had delivered the guaranty conditionally asserted that their signatures were procured by fraud, that the guaranty was delivered conditionally to Andrews and Aarhus, and that the condition was not complied with.

Although the court said that a written guaranty has no legal effect until it is delivered and that in this respect it is like many other written instruments, because the plaintiff bank relied on the guaranty in making the loan, the defendant guarantors, although the guaranty was conditionally delivered, were bound under the equitable rule that when one of two innocent parties must suffer, he who by his act or negligence has made the loss possible must be the one to suffer.

In *Security Nat'l Bank* the defendants argued that Andrews and Aarhus were agents of the bank, that therefore the bank was chargeable with such knowledge as its agents had concerning the transaction, and that since the delivery to the agents was conditional and the condition was not complied with, the plaintiff bank could not recover. That argument, however, was rejected by the court.

Hoffer v. Crawford, 65 N.W.2d 625 (N. D.1954), is one of the more recent decisions of this court applying the equitable rule that

when one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer. In that case the plaintiffs attempted to set aside a deed by which they had conveyed to Crawford an undivided one-fourth interest in oil, gas, and other minerals in certain land on the basis that Crawford acquired the deed through fraud. Because Crawford had conveyed all of his interest to innocent purchasers for value, the court applied the equitable rule aforedescribed and refused to set aside the conveyance. In so doing it said:

> These plaintiffs, by assuming that they were signing a mere copy of the oil, gas and mineral lease and by failing to examine the second and third instruments which they actually signed, have put it in the power of the original mineral deed grantee to give other mineral deeds covering the same property to innocent purchasers who have parted with valuable consideration for the same.

Hoffer v. Crawford, supra, 631–632.

In a decision rendered in 1962 this court, in quoting a previous opinion, said:

> "Fraud practiced by the principal upon the surety, to which the creditor or his agent is in no sense a party, does not, as a rule, affect the liability of the surety to the creditor."

J. R. Watkins Company v. Vangen, 116 N.W.2d 641, 648 (N.D.1962), quoting J. R. Watkins Company v. Keeney, Syllabus 1, 52 N.D. 280, 201 N.W. 833, 37 A.L.R. 1389 (1924).

In J. R. Watkins Company v. Vangen the company entered into a written contract with Mr. Vangen, as purchaser, whereby the company agreed to sell to the purchaser at current wholesale prices, f. o. b. Winona, Minnesota, such goods and other articles manufactured or sold by the company as the purchaser might reasonably require for sale.

By a further and attached agreement Mr. Clemens and Mr. Eslinger became sureties and jointly, severally, and unconditionally agreed and guaranteed to pay for the goods and other articles, including prepaid transportation charges thereon, at the time and place and in the manner provided in the company's agreement with the purchaser. At the end of the term of the contract the company brought an action against the purchaser, Mr. Vangen, and his two sureties, alleging that taking into consideration the sales to Vangen and the payments he had made, there was a balance due and owing the company of $3,751.65. The sureties answered by alleging that they signed an instrument of suretyship at the request of Mr. Vangen, upon his representation that their liability was limited to $1,000, and that in that representation Mr. Vangen was acting as the agent of the company.

■ In affirming the trial court's action in sustaining the objections to certain proffered testimony relative to the agency of. Mr. Vangen this court said:

> The acts or declarations of an alleged agent cannot be used to establish his agency in the absence of evidence tending to show the principal's knowledge of such acts or declarations and his assent to them. * * *

J. R. Watkins Company v. Vangen, supra, 116 N.W.2d 649.

Timely objection having been made in the instant case to the receipt of testimony of the alleged agent, Mr. Anderson, to establish his agency, we have no evidence of probative value before us establishing his agency.

■ As Mr. Anderson's agency has not been established, we must apply what has been said to be the general rule in the United States: that when a principal obligor has induced his surety or guarantor to sign an instrument by false or fraudulent representations, such misrepresentations may not

be set up by the surety or guarantor as a defense to an action on the endorsement or guaranty unless the obligee or guarantee has notice of or has participated in the fraud. Annot., 71 A.L.R. 1278 (1931) and A.L.R. Blue Book of Supplemental Decisions, vols. 1–4; J. R. Watkins Company v. Keeney, 52 N.D. 280, 201 N.W. 833, 37 A.L.R. 1389 (1924).

It is argued by Mrs. Anderson that the foregoing rule should not apply in this case because there exists in this case, in addition to fraud, an abuse of a confidential relationship. Our research of this contention, however, has not convinced us that the additional factor of an abuse of a confidential relationship would justify us in applying a different rule.

■ That being the case, Hartford must be considered an innocent party, and, applying the rule that when one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer, Mrs. Anderson must be the sufferer unless it can be shown that for some other reason she is entitled to be relieved of her obligations under the general indemnity agreement.

Mrs. Anderson contends that the indemnity agreement required that her signature be acknowledged before a notary public and before a disinterested witness; that she acknowledged her signature neither before a notary public nor before a disinterested witness; that nevertheless Hartford's agent, acting as a notary, affixed his signature and seal to the indemnity agreement, asserting that she had acknowledged her signature before him.

■ An examination of the indemnity agreement fails to disclose the signature of a disinterested witness. The certificate of acknowledgment, however, appears regular on its face; and when such is the case, the certificate is presumed to state the truth.

Hoffer v. Crawford, 65 N.W.2d 625, 632 (N.D.1954); Dixon v. Kaufman, 79 N.D. 633, 58 N.W.2d 797, 803 (1953).

■ We are not convinced that the evidence is so clear and convincing in the instant case that it impeaches the certificate of acknowledgment; but assuming for the sake of argument that it does, we agree with the trial court that as neither the notary's acknowledgment nor the signature of a disinterested witness is required to make the agreement legal (there being no statute requiring either), and as the notary's acknowledgment and the signature of a disinterested witness were for the benefit of Hartford rather than for the benefit of the indemnitors, Hartford could waive those requirements without serving notice of such waiver upon the indemnitors.

N.D.C.C. Sec. 22–01–06 provides that an absolute guaranty is binding upon the guarantor without notice of acceptance. In 1945 our legislature amended the law by requiring in Sec. 22–01–06.1 that under certain circumstances notice of acceptance must be given. Notice of acceptance of a guarantor in an indemnity agreement such as we have in this case, however, is not covered by that amendment, it being restricted to cases in which manufacturers, wholesalers, or distributors require agents, salesmen, or dealers to secure the signatures of sureties or guarantors to bonds. Cases such as this one might well suggest that notices of acceptance should be given guarantors in connection with general indemnity agreements, but, as the legislature has spoken to the contrary, we must abide by its decision.

■■ Our study of this case has disclosed that the judgment includes attorney fees, and this is perhaps because the indemnity agreement so provides. It is our view, however, that the legislature intended, under N.D.C.C. Sec. 28–26–04, to prohibit a provision for the payment of attorney fees.

in an instrument such as that involved in this case.

■ This view is in accord with United Development Corp. v. State Highway Dept., 133 N.W.2d 439 (N.D.1965), in which we said:

Attorney fees may not be taxed against the losing party unless specifically authorized by statute.

United Development Corp. v. State Highway Dept., supra, Syllabus 9, 441.

We therefore remand these two cases to the trial court with instructions to modify the judgments to eliminate therefrom the amounts included for attorney fees. The judgments are in other respects affirmed.

TEIGEN, C. J., and STRUTZ, PAULSON and KNUDSON, JJ., concur.