## LEOPOLD DALHEIMER, Respondent, v. WILLIAM H. LUCIA and William Walter, Copartners, Appellants.

(194 N. W. 925.)

**Fraud — expenses recoverable.**

1. In an action based on alleged fraud and misrepresentation which induced the plaintiff to enter into a contract with defendants, the sum expended by the plaintiff in a good faith endeavor to carry out the purposes of the transaction may be recovered.

**Fraud — remedies available.**

2. "One who is defrauded by a false statement which is made to induce and does induce the execution of a contract, has the choice of remedies: (1) To affirm the contract and take its benefits, so far as obtainable and recover any damages sustained by the false statement; or (2) to rescind the contract and recover any moneys paid or property delivered under it."

**Evidence — parol evidence admissible to show fraud.**

3. A party may, notwithstanding the fact that the contract is in writing, show, by parol, that he was induced by false and fraudulent representations to become a party to the contract.

**Fraud — parties participating in deceit liable.**

4. Whether defendants were partners is not material and a joint action may be maintained against them when the evidence shows that both participated in the alleged deceit and misrepresentations.

**Verdict — evidence held sufficient to support verdict.**

5. For reasons stated in the opinion, it is *held*, that there is sufficient evidence to support the verdict of the jury in favor of the plaintiff.

Opinion filed July 26, 1923. Rehearing denied September 10, 1923.

Evidence, 22 C. J. § 1621 p. 1215 n. 65. Fraud, 27 C. J. § 128 p. 18 n. 33; § 143 p. 27 n. 43; § 269½ p. 108 n. 78; § 272 p. 109 n. 98.

---

Note.—(1) Right of one induced by false representations to enter into contract, to recover amount expended, 12 R. C. L. 456; 2 R. C. L. Supp. 1429.

(2) Remedies of one induced by false statements to execute contract, see 12 R. C. L. 406; 2 R. C. L. Supp. 1423; 4 R. C. L. Supp. 756.

(3) Admissibility of parol evidence to show instrument obtained by fraud, see 10 R. C. L. 1058; 2 R. C. L. Supp. 1146; 5 R. C. L. Supp. 585.

(4) Participation in fraud essential to responsibility, see 12 R. C. L. 400; 2 R. C. L. Supp. 1423.

Appeal from the District Court of Stark County, North Dakota, *Berry, J.*

Affirmed.

*Simpson & Mackoff,* for appellant.

Kerr, Fraud, p. 10; Sutherland, Fraud, § 7, p. 17; Ponder v. Altuna Farms Co. (Col.) 143 Pac. 570; Kingman v. Stoddard, 85 Fed. 740.

"Fraud without damage is not actionable. If the fraud be discovered while the contract is wholly executory, the party defrauded has the option of going on with it or not, as he chooses. If he executes it, the loss happens from such voluntary execution, and he cannot recover for a loss which he deliberately elected to incur." Simon v. Goodyear Metallic Rubber Shoe Co. 105 Fed. 573.

"Where one is induced by fraud, in the form of false representations, to enter into a contract, and afterwards, upon obtaining full knowledge of the fraud practised upon him, and of all material facts, declines to repudiate it, and expressly ratifies it, he can neither rescind nor maintain an action for damages." St. John v. Hendrickson, 81 Ind. 350.

"The statement by one attempting to sell a cash register that its use would save the expense of a bookkeeper and one half of one clerk's time, is merely dealer's talk, and, although false, is not ground for rescission of contract." National Cash Register v. Townsend, 70 L.R.A. 349; Benjamin, Sales, § 483; Saunders v. Hatterman, 37 Am. Dec. 404.

"Courts cannot relieve parties from imprudent bargains; they must suffer the consequences of their indiscretion, unless an undue advantage has been taken of them. Fraud will vitiate a contract. But where the parties to it stand upon an equality of footing, the fraud must consist of a false representation of a material fact, and the party to whom it is made not be able, by the exercise of reasonable caution, and vigilance, to detect its falsity." Finlayson v. Finlayson (Or.) 21 Pac. 57.

The complaint does not allege nor does the proof show any rescission of the contract and this action is necessarily based upon the affirmance of the contract in question. Sonnesyn v. Akin, 14 N. D. 248.

"The general rule unquestionably is that the party believing himself defrauded must elect to rescind and make his election known in some

manner to the other party. This is founded upon the plainest principles of justice. Any action which the plaintiff might begin should be begun promptly after the discovery of the fraud." Sneve v. Schwartz, 25 N. D. 287.

"A false pretense is a misrepresentation as to an existing fact or past event and not a mere broken promise to do something in the future." Spriggs v. Craig, 36 N. D. 160.

Such a representation as is charged in this case, in order to avail himself for damages, must have been relied upon and by which he was actually misled to his injury. It is evident that in this case the plaintiff did not rely upon such statements, even assuming them to be true. Sioux Bkg. Co. v. Kendall (S. D.) 62 N. W. 377.

It is certainly true that a false representation must be knowingly made. 125 U. S. 248, 31 L. ed. 679 and cases cited.

*T. F. Murtha* and *J. P. Cain,* for respondent.

The appellants do not plead in their answer that plaintiff has waived his claim for fraud, or that he is estopped to assert the same. These matters must be pleaded. 20 Cyc. 104, 105; 27 C. J. §§ 138, 164, pp. 18, 19, 25, 40; City Deposit Bank v. Green (Minn.) 115 N. W. 893; Barr v. Kimball (Neb.) 62 N. W. 196.

"The retention of property received in transaction by one who is injured by another's fraud does not preclude the injured person from maintaining an action for damages, on the theory that he ratified the transaction." Ohlwine v. Pfaffman (Ind.) 100 N. E. 777 (§§ 1, 2, 3 and 6 of Syl).

"A vendor, who assumes to have special knowledge of the value of property sold, of which vendee is known by the vendor to be ignorant, who also knows that the vendee relies upon his representations, as to value, is liable for damages for misrepresentations." Turk v. Botsford (Or.) 139 Pac. 925; Sell v. Miss. River Logging Co. (Wis.) 50 N. W. 1065; Haven v. Neal (Minn.) 45 N. W. 612; Reger v. Henry (Okla.) 150 Pac. 723.

"The cause of action arising from deceit is a part of the common law. The remedy is in its nature an action on the case and is founded on the ancient writ of deceit." 20 Cyc. 86 (A).

"A party who has been induced by fraud to enter into a contract is

not obliged to complete the performance of the contract in order to bring his action of deceit; indeed, by doing so he may waive his right of action."

"The question whether the conduct of plaintiff amounted to a ratification of the transaction or to a waiver or an estoppel cannot be submitted to the jury unless the matter is pleaded." 20 Cyc. 105; 27 C. J. § 139, p. 26.

"An answer setting up a waiver of the fraud must allege that the acts relied upon to constitute the waiver were done by plaintiff with knowledge of the fraud." 20 Cyc. 104.

Damages are recoverable whether they could have been anticipated or not. McDonnell v. Ry. 17 N. D. 606, 609.

It is not necessary for us to prove every false statement alleged. Guild v. More, 32 N. D. 443.

Things that the vendor or owner is bound or presumed to know. McCabe v. Desnoyers (S. D.) 108 N. W. 341; Aldrich v. Scribner (Minn.) 18 L.R.A.(N.S.) 379.

The supreme court sits merely as a court of review and cannot consider matters that were not called to the attention of the trial court,— so the question of the sufficiency of the evidence is not before this court on this appeal. Landis Mach. Co. v. Konantz Saddlery Co. 17 N. D. 310; McBride v. Wallace, 17 N. D. 495; 3 C. J. 836–839.

JOHNSON, J. This is an action to recover damages for fraud and deceit. The jury returned a verdict for the plaintiff in the sum of $1,600 and interest from May 1, 1912. Thereafter, a motion for a new trial was duly made and an appeal taken from the judgment and from the order denying a motion for a new trial.

The plaintiff and defendants, in December, 1910, were residents of Hurley, Wisconsin. In December, 1910, and in January and February, 1911, negotiations were had between the defendants, who were engaged in business in Hurley, and the plaintiff, who was engaged in teaming at that place and also operated a hay farm of about 120 acres near the city, with reference to working some land in western North Dakota, owned by the defendants. As a result of these negotiations, a contract, known in this case as exhibit "A," was executed by the parties on the 13th of February, 1911, at Hurley, Wisconsin, by the terms of

which the plaintiff agreed to cultivate sections 21 and 29 in Billings county, North Dakota, then owned by the defendants, during the year 1911. He agreed to harvest all crops grown on at least 600 acres, described in the contract, and to deliver the same to the elevator in Belfield, North Dakota. The plaintiff agreed to furnish and pay for all labor and team work necessary to obtain the results contemplated under the contract. The defendants agreed to furnish the seed and machinery to cultivate the land; also a threshing machine and all oil and repairs. For the services of the plaintiff, it was agreed that he should receive 25 per cent of all moneys received from grain grown on the premises during the year 1911. The contract further provided that the defendants were to make certain advances to the plaintiff to enable him to finance the operations and to move from Hurley to the land, and such advances were to be repaid by the plaintiff. The defendants were authorized to deduct the amount of such advances from the 25 per cent which the plaintiff was to receive as compensation under the contract.

Sometime in March, 1911, the plaintiff loaded some horses and personal property upon a freight car at Hurley and started on his journey to North Dakota, to carry out the contract. After some difficulties, hereinafter more fully referred to, the parties succeeded in breaking approximately 600 acres of virgin land, described in the contract, and seeding the same in flax, the work having been completed about the 28th of June. Approximately 65 acres had been broken and seeded in flax before the first of June. The yield from these 65 acres was quite satisfactory and the crop matured. The balance of the crop was apparently a disappointment to all the parties; the flax froze about the 28th of August, 1911 and for various reasons, but without the fault of the plaintiff, cutting of the flax was not finished until in December and some of it, at least, was not threshed until the spring of 1912. Out of the proceeds, the plaintiff received credit, under the contract, for $480.

The defendants sued the plaintiff in the circuit court of Iron county, Wisconsin, on account of claims for advances and the like, during the period of the contract in controversy and recovered a judgment of $2,314.66, which was entered on July 9, 1915, together with costs. There was submitted to the jury in that case the following question: "Did the defendant negligently fail to cut the 1911 crop at the proper

time ?" The jury answered "no." The defendant in that action,—the plaintiff in the case at bar,—interposed a counterclaim based upon the same facts substantially as are the basis of his cause of action here, but took a voluntary nonsuit thereon, and thereafter commenced this action in the district court of Stark county, North Dakota.

The plaintiff bases his cause of action upon alleged fraud and mis-representation by the defendants, which induced him to enter into the contract aforesaid and to move to Belfield and to incur expenses in con-nection with moving from his former home and the operations under the contract in North Dakota. The facts, as testified to by plaintiff and his son William, bearing upon the claims of fraud and misrepre-sentation, and alleged in the complaint, are substantially as follows: That during the months of December, January and February, the de-fendants solicited the plaintiff to go to North Dakota and break two sections of land owned by the defendants in Billings county; that in order to induce the plaintiff to undertake this business, the defendants fraudulently and falsely represented to the plaintiff that the land was smooth, rich, nice farm land, without gumbo or burnouts, in Billings county, North Dakota, with good soil of chocolate color, easily tillable and that tractors out there pulled eight or ten plows "with different rigs;" that the soil was rich and easily tilled and that all of the land in the two sections could be cultivated and broken by the use of a tractor, which the defendants would furnish and which would pull eight fourteen inch breaking plows, plowing at a depth of five inches; that, in addition to the plows, and, as a part of the same operation, a seeder and either a packer or drag could be attached to the engine and that the engine would pull all this machinery, and the breaking and seeding would be completed in one operation; that the engine, with the eight breaking plows behind, could be operated by one man; that the engine would pull harvesting machinery, to be used in cutting the crop; that flax could be sown in this part of North Dakota any time until the first of July, with certainty that a crop would mature; and that flax sown upon new breaking was a certain crop in this territory and would yield from 18 to 25, or even 40 bushels per acre, at $2.50 per bushel. The complaint alleges that the defendants represented that the land was free from alkali, but the evidence does not support this allegation.

The evidence further shows that the land was, in fact, not smooth or level land; that there were gumbo (about 30 per cent of one section, according to plaintiff) and burnout or hardpan spots, some of which were practically impossible of cultivation; that there were ravines and hills of considerable size upon the premises; that the tractor could pull only four plows and plow four inches deep, and that other implements could not be attached to it because of the nature of the soil and of the land; that the plaintiff had to hire men from time to time to assist him and that he had to hire gangs of teams to seed and drag the land, because the tractor could not and did not do the work; that, because the plaintiff had to engage teams and men on account of the failure of the machinery and the tractor furnished by the defendants, the plaintiff incurred expenses in a considerable amount, in a good faith endeavor to carry out the transaction to which he testified and which item is larger than the verdict of the jury. The testimony of one of the plaintiff's witnesses, an agricultural expert at the United States Experiment Station at Dickinson, North Dakota, further shows that it is not proper to seed flax in western North Dakota as late as the middle of June, or later; that the proper time to put it in is between the first and the middle of May, and that if it is put in much later than the middle of May, there is great danger that the flax will not mature, but will be damaged or destroyed by frosts. This expert witness testified that the latest date, to insure any sort of a crop, for plowing and seeding flax in western North Dakota, was the 10th of June, and then only under extremely favorable conditions. On cross-examination, the witness stated that in 1920, at the experiment station, of which he has charge, the flax crop was about nine bushels to the acre; and that that yield was better than the average yield of flax in that locality, which is not very far from the land described in the contract in controversy. On cross-examination, this same expert further said that the average yield of flax in the rotations according to the government instructions at Dickinson for fifteen years, was 7.4 bushels.

The evidence further shows that the plaintiff had never been in North Dakota, knew nothing about conditions out here, nor about flax culture; that he had had very little experience in farming of any sort. The defendants, on the other hand, had been in North Dakota, were

the owners of this land, had seen it, and the plaintiff, according to the testimony, relied upon their statements with reference to the nature of the soil, the character of the land, as to whether it was level or rough, the probable yield of flax under normal or favorable conditions, the usual price and the proper time to seed the same, under the climatic conditions in the locality. Rodee v. Seaman, 33 S. D. 184, 145 N. W. 441. The testimony shows that the plaintiff was entirely ignorant of farm machinery and particularly of the use of gas tractors; that he relied upon the representations of the defendants as to the use to which a gas tractor might be put, its power and its general utility value upon a farm. The testimony tends to show positive representations by the defendants upon these points and a reliance thereon by the plaintiff. Rodee v. Seaman, supra. We think there is sufficient evidence in the record to support a finding by the jury that these representations were made; that the plaintiff was justified in relying upon them and in believing them; that he did in fact rely upon and believe the statements and representations, and did, in reliance thereon, and not otherwise, execute the contract hereinbefore described; that the representations were not true in substantial particulars; that if the defendants did not know the falsity of their representations, they were in a position to know, or, in any event, made positive assertions as to important facts in a manner not warranted by the information which they had, which assertions were contrary to the facts: Comp. Laws, 1913, § 5849; and that plaintiff was damaged in the amount awarded him by the jury.

No damages are claimed in the evidence, based upon the fact that the yield per acre was less than represented. Plaintiff seeks to recover expenses incurred as a proximate result of the alleged fraud. The testimony introduced by the plaintiff shows that he expended a sum larger than the verdict in an endeavor in good faith to carry out the purposes of the transaction into which he was led by the alleged misrepresentations of the defendants. Under the facts in this case, such expenditures may be recovered. Snyder v. Markham, 172 Mich. 693, 138 N. W. 234, 27 C. J. 86.

We therefore do not believe that the contention of appellant can be sustained, that there is no support in the evidence for a verdict based upon fraud and misrepresentation, inducing the plaintiff to enter into

the contract, or that the verdict is excessive, or was given under the influence of passion and prejudice. See Guild v. More, 32 N. D. 432, 155 N. W. 44.

The appellant contends that the plaintiff cannot recover because he did not rescind the contract, but delayed for approximately five years before he commenced suit, thereby condoning the fraud, if any there was. This contention cannot be sustained. The plaintiff had the right either to rescind the contract or to affirm it and bring action for damages for fraud. This is well settled in North Dakota. "One who is defrauded by a false statement which is made to induce and does induce the execution of a contract, has the choice of remedies: (1) to affirm the contract and take its benefits, so far as obtainable and recover any damages sustained by the false statement; or (2) to rescind the contract and recover any moneys paid or property delivered under it." Syllabus in Sonnesyn v. Akin, 14 N. D. 248, 256, 104 N. W. 1026.

The record shows that until the determination of the suit in Wisconsin, there was a balance claimed by the defendants herein, due from the plaintiff on account of advances; in that suit, judgment was entered for such claim. Shortly thereafter, plaintiff brought the present action in Stark county. The defendants do not allege waiver or estoppel in their answer, and the rule is that the facts constituting the alleged waiver or estoppel must be pleaded in the answer before the question may be submitted to the jury. 27 C. J. 40; or considered on appeal, if proper objection is seasonably made, Parliman v. Young, 2 Dak. 175, 4 N. W. 139, 711. In any event, on the facts as they appear in the record, the jury would be justified in finding that the plaintiff did not waive the claim of damages for fraud, nor was he estopped by delay in bringing suit or conduct subsequent to the contract, to make such claim. Manifestly, the truth or falsity of important representations might not reasonably be expected to become known to him until in the fall of 1911.

Appellant contends that the court erred in admitting evidence of the statements and misrepresentations made prior to the execution of the contract, because all of such statements were merged therein. Under § 5889, Comp. Laws, 1913, the position is undoubtedly correct, in so far as the terms of the contract are concerned. "It is well established that, as fraud vitiates everything which it touches, parol

evidence is always admissible to show for the purpose of invalidating a written instrument, that its execution was procured by fraud, or that, by reason of fraud, it does not express the true intention of the parties." 22 C. J. 1214. "The party defrauded may show by parol that he was induced by false and fraudulent representations to become a party to the contract." Guild v. More, 32 N. D. 432, 455, 155 N. W. 44.

The appellant contends that the evidence shows that defendants were not partners. Whether partners or not, in the technical sense, the evidence supports a finding by the jury that this was a joint venture, that they participated in the deceit and fraudulent misrepresentations alleged by the plaintiff as the foundation of his cause of action, and under such circumstances, a joint action may be maintained against them. 27 C. J. 27. The record shows that the defendants jointly sued and recovered judgment against plaintiff in Wisconsin.

Finding no error in the record and the verdict being supported by substantial evidence, the judgment of the trial court is affirmed.

CHRISTIANSON, BIRDZELL, and NUESSLE, JJ., concur.

BRONSON, Ch. J., concurs in the result.