L. H. CARUFEL, Doing Business Under the Name and Style of Bismarck Marble and Granite Works, Appellant, v. LAURA M. KOUNTS, Respondent.

(232 N. W. 609.)

92

Opinion filed October 21, 1930.

*F. E. McCurdy,* for appellant.
*Williams & Lindell,* for respondent.

NUESSLE, J. Plaintiff brings this action to recover on a written contract for the sale and purchase of a burial vault. The defendant, the purchaser, admitting her signature to the instrument, defends on the ground that there is no valid contract for the reason that her signature was obtained by misrepresentation and fraud. On the issues thus made the case was tried to a jury, which found in favor of the defendant.

The defendant's version of the facts is shortly as follows: The plaintiff is engaged in the business of manufacturing and selling monuments and burial vaults. The defendant is a widow living on a farm. In July, 1928, she negotiated with the plaintiff touching the purchase of a monument to her deceased husband and signed a conditional contract for the purchase of such a monument. This contract was on a printed form provided by the plaintiff. The defendant was uncertain as to how her crop would turn out and whether she would be able to pay for such a monument that year, so she signed the contract on condition that it should not be effective unless she thereafter advised the plaintiff that it should be. This condition was endorsed upon the printed form by the plaintiff. The plaintiff gave her a copy of the contract so executed. Some time elapsed and she said nothing to the plaintiff about taking the monument so the fore part of September plaintiff's salesman visited her at her farm home and talked to her about the matter. He had with him advertising material showing

burial vaults which he exhibited to her. With respect to this conversation she testified as follows: "Well, when he first came he asked me about buying or getting that monument, and I told him I could possibly not do anything of the kind, because I didn't know how our financial condition would be; we hadn't threshed our grain, and furthermore I made a remark about the ducks having eaten some of our grain, and I didn't know how we stood financially and I told him so; and then he had some pictures, descriptions of different vaults and monuments, and I looked at a certain vault there that I sort of admired, and I told him I believed I would prefer one like that instead of the monument; and so he began to try to make me take that, and I told him that I could possibly not make any agreement that day to buy on that day; I said I couldn't, and I wouldn't know when I could. One statement I made was that I wouldn't know until about November first how our financial condition would be." The salesman prepared a paper for her signature, using the same sort of a blank that had been used in writing up the original conditional contract. He asked for the inscription that she would like to have on the plate and said that the paper was simply an expression in favor of a vault instead of a monument and that she would be under no obligation if she gave him the inscription and signed the paper. So she signed it. This paper was in fact a contract for the purchase of a vault and is the contract on which the suit is predicated. The printed form consists of about five hundred words, printed in relatively small type. It is not denominated a contract, but the second line of the printed matter below the heading, begins as follows: "I, the undersigned have this day bought. . . ." And at the conclusion of the printed matter, some five or six lines above the place for signature, appear these provisions: "No special agreement entered into by agents will be honored unless specified in the within original contract. This contract is not subject to cancellation." The vault was manufactured and the inscription cut on the plate, but the defendant refused to accept it so plaintiff brought this action to recover the purchase price according to the terms of the contract.

The defendant is an alert and intelligent woman. She has a common school education and can read and write readily. She was not given a copy of the contract for the reason, as the plaintiff says, "She

did not request one." Defendant says that she did not read the contract before she signed it but she admits she had an opportunity to do so and did not merely because she relied upon the salesman's statement as to its contents and effect. The negotiations prior to the signing of the contract were carried on in her sitting room and when the salesman gave the paper to her for her signature she took it out to the kitchen table to sign it. She was there alone and had ample opportunity to consider over the matter and read the paper before she signed. The jury accepted her version of the transaction and returned a verdict in her favor. The plaintiff having laid a proper foundation therefor, moved for judgment notwithstanding the verdict. This motion was denied. Judgment was entered for the defendant and plaintiff appeals.

Plaintiff contends that no misrepresentations were made and that there was no fraud in securing defendant's signature to the contract. He further contends that, in any event, the defendant had ample opportunity to read the contract; that she is a capable woman, well able to read and write; and that if she failed to read the contract before she signed it she cannot now relieve herself from the obligation thereby incurred by proof by parol of false representations made to her respecting its contents and which induced her signature. The point was raised, first by objection to the introduction of evidence, next by motion for a directed verdict, and, lastly, by motion for judgment notwithstanding the verdict.

The universal rule, embodied in the statute as Section 5889, C. L. 1913, is that a contract in writing supersedes all oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument. And that parol evidence is not admissible to vary or contradict the terms of a written instrument is so well established that citation of authority in support of the propositions would be a fruitless use of time and labor. Accordingly, the plaintiff insists that proof by parol that the defendant's signature to the contract was induced by false representations is inadmissible; that the contract as evidenced by the writing must stand and that he is entitled to recover under its terms.

The defendant's defense, however, strikes deeper than these propositions on which the plaintiff relies. The defendant concedes their verity

but says they are applicable only where there is a contract, and that here, since her assent to the terms of the writing as evidenced by her signature thereto was obtained by false and fraudulent representations, she may resort to parol evidence to show such representations and thus avoid the contract. The trial court sustained the defendant's contention and admitted her evidence accordingly. We think that there was no error in so doing. "The parol evidence rule does not become applicable unless the parties have assented to a certain writing or writings as the statement of a contract between them. Accordingly it . . . may be shown by parol evidence that a writing was never executed or delivered as a contract, or that assent thereto was impaired by fraud, illegality, duress, mistake, or failure of consideration, rendering the contract void or voidable. . . ." Williston, Contr. § 634. See also Foot, S. & Co. v. Skeffington, 52 N. D. 307, 202 N. W. 642, and cases cited. It is not, however, sufficient to avoid a contract merely that false and fraudulent representations were made with respect to it. There must have been reasonable attention and vigilance on the part of the party seeking on that account to avoid it. If, notwithstanding such false and fraudulent representations, the aggrieved party, exercising reasonable care and attention, should not have been deceived, he cannot complain. As is said in Standard Mfg. Co. v. Slot, 121 Wis. 14, 105 Am. St. Rep. 1016, 98 N. W. 923:

"The fact that a false representation is made in respect to the paper is not necessarily sufficient to excuse such person for affixing his signature thereto in ignorance of its contents, unless under all the circumstances, in view of his duty to give reasonable attention to the protection of his own interests, the false representation was still reasonably calculated to and did induce him not to make the investigation which he otherwise would have made. A person cannot sign a paper in ignorance of its contents and thereafter excuse such ignorance by the mere plea that he was busy or that he is habitually neglectful in such circumstances, and throw upon the courts the burden of protecting him from the consequences of his imprudence. The policy of the law is fixed to the effect that he who will not reasonably guard his own interests when he has reasonable opportunity to do so, and there is no circumstance reasonably calculated to deter him from improving such opportunity, must take the consequences. Courts do not exist for the

purpose of protecting persons who fail in that regard. Where there is such inattention upon the one side and fraud upon the other, and but for the former feature the latter would not be effective, and loss occurs to the inexcusably negligent one, he is remediless; not because the wrongdoer can plead his own wrongdoing as an excuse for not making reparation, but, first, because the consequences are attributable to inexcusable inattention of the injured party; and second, because the court will not protect those who, with full opportunity to do so, will not protect themselves."

See also Minneapolis Threshing Mach. Co. v. Hocking, 54 N. D. 559, 209 N. W. 996, and cases cited. So, in the instant case, notwithstanding any false and fraudulent representations that may have been made by the plaintiff, the defendant was required to exercise reasonable vigilance in protecting her rights. Unless she did so she has no defense. She could not act heedlessly, closing her eyes to that which should have been apparent to her and then invoke the law to relieve her from an obligation thus blindly incurred. But the question as to whether a party who has entered into a contract has exercised reasonable vigilance in protecting his rights is, ordinarily, a question of fact to be determined upon a consideration of all the circumstances connected with the transaction. What constitutes vigilance in one case may not in another. Here, the defendant was a woman, who, while bright and intelligent, nevertheless was, in the nature of things, inexperienced in business affairs. While the transaction involved in this case was a business transaction, so far as the defendant was concerned it was largely colored by sentiment. On the other hand, the plaintiff was experienced in business. He was not actuated by any sentiment in the transaction. As to him it was purely a dollar and cent affair. So it cannot be said that the parties were dealing wholly at arms length, each on an equality in a business way with the other. The plaintiff contends that defendant must have known what the contents of the written contract were, for in the original transaction she had signed a contract in which the printed matter was identical in all respects with the printed matter in the contract in suit, and had a copy thereof. But the first contract was signed with the condition indorsed upon it by the plaintiff that the defendant need not take the monument unless she later expressed a desire to do so. It is more convincingly arguable

that because of the former transaction the defendant was easily misled in the latter, than it is that because of the former she could not have been misled in the latter. If such an arrangement could be and was made in the first transaction (as it was), the defendant was the more justified in believing that it could be and was made in the second. We cannot say, considering all the circumstances, that there was not sufficient evidence to justify the jury in finding, first, that there were false and fraudulent representations on the part of the plaintiff with respect to the contents of the instrument, and, second, that the defendant exercised reasonable care in protecting her own rights when induced by and in reliance upon the plaintiff's representations she signed it without reading it. The evidence being admissible, the motions for directed verdict and for judgment notwithstanding the verdict were properly denied.

The judgment is affirmed.

Burke, Ch. J., and Burr, Birdzell and Christianson, JJ., concur.