2004 ND 178

**Mitch EVENSON, Plaintiff and Appellant**

v.

**QUANTUM INDUSTRIES, INC., and James H. Page, Defendants and Appellees.**

No. 20040033.

Supreme Court of North Dakota.

Sept. 17, 2004.

Jonathan P. Sanstead, Pearce & Durick, Bismarck, N.D., for plaintiff and appellant.

James E. Nostdahl, Pringle & Herigstad, P.C., Minot, N.D., for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] Mitch Evenson appealed from a summary judgment dismissing his action against Quantum Industries, Inc. ("Quantum"), and James Page. We affirm, concluding the trial court did not err in determining Evenson had failed to present evidence raising a genuine issue of material fact on his breach of contract and fraud claims.

I

[¶ 2] Quantum has designed and manufactured various products, including the Maximan line of products. The Maximan is a walk-behind skid-steer loader. Page is the president of Quantum.

[¶ 3] On approximately April 5, 2000, Evenson, who owned a laundromat, car wash, and RV park in Minot, visited Quantum's manufacturing plant in Bottineau, seeking a used skid-steer loader. Evenson was impressed with the Maximan and entered into negotiations with Quantum to become a dealer of Maximan products. In early May 2000, Evenson met with Page and Brad Knudson, Quantum's sales manager. Evenson alleges that he expressed concerns Quantum would sell off the Maximan line to another manufacturer and that Page stated the Maximan line would not be sold.

[¶ 4] On May 15, 2000, Evenson and Quantum executed a written dealership agreement. The agreement included a provision for terminating the agreement:

Termination of the dealer relationship can be made by either party, for any reason, by written notice.

Evenson began efforts to market the Maximan in North Dakota and Colorado.

[¶ 5] In August 2000, the Bobcat Company contacted Quantum with questions about the Maximan. Bobcat eventually expressed interest in purchasing the line. On January 24, 2001, Quantum sold the Maximan line, including the exclusive right to market and sell the Maximan, to Bobcat, effectively terminating the dealership agreement with Evenson.

[¶ 6] Evenson brought this action against Quantum and Page in July 2001, alleging breach of contract, fraud, negligent misrepresentation, and unjust enrichment. Quantum and Page moved for summary judgment dismissing the action. The trial court concluded Evenson had failed to raise a genuine issue of material fact on his claims, and Evenson had failed to present evidence from which a jury could find fraud by clear and convincing evidence. Judgment was entered dismissing Evenson's action, and he appealed.

[¶ 7] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01 and 28–27–02.

## II

[¶ 8] We recently outlined our standard of review of an appeal from a summary judgment in *Zuger v. State*, 2004 ND 16, ¶¶ 7–8, 673 N.W.2d 615 (citations omitted):

Summary judgment is a procedural device for promptly disposing of a lawsuit without a trial if there are no genuine issues of material fact or inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. "Whether summary judgment was properly granted is 'a question of law which we review de novo on the entire record.'" *Iglehart v. Iglehart*, 2003 ND 154, ¶ 9, 670 N.W.2d 343 (quoting *Wahl v. Country Mut. Ins. Co.*, 2002 ND 42, ¶ 6, 640 N.W.2d 689). On appeal, this Court decides if the information available to the trial court precluded the existence of a genuine issue of material fact and entitled the moving party to summary judgment as a matter of law. Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim on which they will bear the burden of proof at trial.

A party resisting a motion for summary judgment may not simply rely upon the pleadings or upon unsupported, conclusory allegations. "Factual assertions in a brief do not raise an issue of material fact satisfying Rule 56(e)." *Kemp v. City of Grand Forks*, 523 N.W.2d 406, 408 (N.D.1994). "Nor may a party merely reassert the allegations in his pleadings in order to defeat a summary judgment motion." *Id.*

The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.

In summary judgment proceedings, neither the trial court nor the appellate court has any obligation, duty, or responsibility to search the record for evidence opposing the motion for summary judgment. The opposing party

must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief.

*Iglehart,* at ¶ 10 (quoting *Anderson v. Meyer Broad. Co.,* 2001 ND 125, ¶ 14, 630 N.W.2d 46 (citations omitted)). Mere speculation is not enough to defeat a motion for summary judgment, and a scintilla of evidence is not sufficient to support a claim. If no pertinent evidence on an essential element is presented to the trial court in resistance to a motion for summary judgment, it is presumed that no such evidence exists.

## III

[¶ 9] Evenson contends the trial court erred in granting summary judgment dismissing his breach of contract claims, because Quantum breached oral and implied terms of the dealership contract.

## A

[¶ 10] Evenson argues that during negotiations for the dealership agreement, he expressed concerns to Page and Knudson about the Maximan product line being sold. Evenson claims Page assured him the Maximan product line would not be sold. Evenson contends this created an additional term to the parties' contract, prohibiting sale of the Maximan product line, and Quantum breached this oral term when it sold the Maximan line to Bobcat, effectively terminating Evenson's dealership agreement. Quantum argues any prior oral negotiations were superseded by the parties' written agreement, which specifically provided the dealership agreement could be terminated by either party at any time for any reason.

[¶ 11] The parol evidence rule is partially codified in N.D.C.C. § 9–06–07:

*Written contract supersedes oral negotiations.* The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.

The parol evidence rule is a rule of substantive law and precludes the use of evidence of prior oral negotiations and agreements to vary or add to the terms expressed in the written contract. *Syversen v. Hess,* 2003 ND 118, ¶ 5, 665 N.W.2d 23; *Des Lacs Valley Land Corp. v. Herzig,* 2001 ND 17, ¶¶ 7–8, 621 N.W.2d 860; *Radspinner v. Charlesworth,* 369 N.W.2d 109, 112 (N.D.1985). All preliminary negotiations, conversations, and verbal agreements are merged into and superseded by the subsequent written contract. *Syversen,* at ¶ 5; *Des Lacs,* at ¶ 8; *Gajewski v. Bratcher,* 221 N.W.2d 614, 626 (N.D.1974). The rule is founded on experience and public policy, created by necessity, and designed to give certainty to a transaction that has been reduced to writing by protecting the parties against the doubtful veracity and uncertain memory of interested witnesses. *Syversen,* at ¶ 5; *Des Lacs,* at ¶ 8; *Gajewski,* at 626.

[¶ 12] Even though we must, for purposes of summary judgment, accept Evenson's allegations about the prior oral negotiations as true, Page's alleged assurance that the Maximan product line would not be sold cannot be used to vary or add to the parties' subsequent written dealership agreement. That agreement gave Quantum the right to terminate Page's dealership at any time for any reason. The trial court did not err in refusing to enforce the alleged oral term.

## B

[¶ 13] Evenson argues Quantum breached an implied term in the contract

prohibiting termination of the dealership agreement without good cause. Evenson contends the Maximan constituted "farm machinery" under N.D.C.C. § 51–07–01(1) and therefore his dealership agreement could not be terminated except for "good cause" under N.D.C.C. § 51–07–01.1.

[¶ 14]   Quantum contends Evenson did not raise this issue in response to the motion for summary judgment and is therefore precluded from raising it on appeal. Evenson has not drawn our attention to any portion of the record showing this issue was raised in the trial court. When a party fails to raise an issue in the trial court in response to a motion for summary judgment, he is precluded from raising the issue for the first time on appeal. *Dimond v. State ex rel. State Bd. of Higher Educ.*, 2001 ND 208, ¶ 19, 637 N.W.2d 692.

## C

[¶ 15]   We conclude the trial court did not err in granting summary judgment dismissing Evenson's breach of contract claims.

## IV

[¶ 16]   Evenson argues the trial court erred in dismissing his fraud claims against Quantum and Page. Evenson contends he was fraudulently induced to enter into the dealership agreement by Page's assurance the Maximan product line would not be sold.

[¶ 17]   Evenson argued Page's promise that the Maximan line would not be sold created a term of the contract prohibiting sale of the line. Preliminary oral statements and promises related to the terms of the contract do not provide the basis for a fraud claim if there is a subsequent written contract. *See First State Bank v. Moen Enters.*, 529 N.W.2d 887, 892–93 (N.D.1995). Because Page's

alleged promise related to terms of the contract and there is contradictory language in the parties' subsequent written contract, we conclude the trial court did not err in granting summary judgment dismissing Evenson's fraud claim.

## V

[¶ 18]   The judgment dismissing Evenson's action against Quantum and Page is affirmed.

[¶ 19]   GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, JJ., concur.

[¶ 20]   The Honorable JOHN C. McCLINTOCK, JR., D.J., sitting in place of WILLIAM A. NEUMANN, J., disqualified.

Kapsner, Justice, dissenting.

[¶ 21]   I respectfully dissent. Summary judgment was improperly granted on Evenson's claim for fraud in the inducement. I would reverse and remand for further proceedings relating to the claim of fraud.

[¶ 22]   Evenson sued for fraud alleging he was induced to enter into a contract as a result of representations made by James Page and Quantum that "they would agree not to sell the Maximan product line or the related rights to manufacture, sell and/or market the Maximan to any third party."

[¶ 23]   Fraud is defined in N.D.C.C. § 9–03–08:

Actual fraud within the meaning of this title consists in any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:

1.   The suggestion as a fact of that which is not true by one who does not believe it to be true;

2.   The positive assertion, in a manner not warranted by the information of the person making it, of that which

is not true though he believes it to be true;

3. The suppression of that which is true by one having knowledge or belief of the fact;

4. A promise made without any intention of performing it; or

5. Any other act fitted to deceive.

The party alleging fraud has the burden of proving each element of fraud by clear and convincing evidence. *First Union Nat'l Bank v. RPB 2, LLC*, 2004 ND 29, ¶ 22, 674 N.W.2d 1.

[¶ 24] In support of this cause of action, Evenson provided his own sworn testimony about the conversation that he alleges contained the fraudulent representations:

A. The day that I recall was in Brad's office. Brad was behind his desk, Jim was sitting on a chair in his office. We were talking about some of the problems and so forth that we'd encountered with it and what they were doing to rectify it. I told him that the, you know, I thought it was a great concept. And basically I told him before I would go into a dealership agreement, I wanted to make sure that the product is not going to be sold off.

Q. So that was one of your main concerns at that point?

A. Yes.

Q. Okay. And what did they tell you?

A. That it would not be.

Q. Who told you that?

A. Jim.

Q. Do you know the approximate date of that meeting?

A. It was prior to me signing the dealership agreement.

[¶ 25] In addition Evenson provided deposition testimony given by Page that, prior to the agreement with Evenson, companies owned by Page had developed and sold at least four product lines. During the deposition, Page was also specifically asked about his plans to sell the Maximan line.

Q. Did you plan on selling off the Maximan unit?

A. All of our product lines are for sale at some point.

[¶ 26] For purposes of summary judgment, the trial court was obliged to accept the testimony offered by Evenson as true. Even applying the heightened burden of proof required to establish fraud, a fact finder who believes the testimony offered could rationally infer that Page intended to sell when he made the representations to Evenson that he would not sell. Much will depend on the fact finder's determination of the credibility of the witnesses. Evenson has established a genuine issue of material fact on the fraud claim.

[¶ 27] Although the parol evidence rule, as codified in N.D.C.C. § 9–06–07, provides a written contract supercedes oral negotiations, there is an unbroken line of cases recognizing parol evidence is admissible to show a party was fraudulently induced to become a party to a contract, even though the contract is in writing. *National Cash Register Co. v. Midway City Creamery Co.*, 49 N.D. 441, 191 N.W. 762, 764 (1922); *Dalheimer v. Lucia,* 50 N.D. 78, 194 N.W. 925, 928 (1923); *Carufel v. Kounts,* 60 N.D. 91, 232 N.W. 609, 611 (1930); *Hartford Accident & Indem. Co. v. Anderson,* 155 N.W.2d 728, 730–31 (N.D. 1968); *Schue v. Jacoby,* 162 N.W.2d 377, 382 (N.D.1968); *Krank v. A.O. Smith Harvestore Products, Inc.,* 456 N.W.2d 125, 130–31 (N.D.1990).

[¶ 28] The majority relies upon *First State Bank v. Moen Enterprises,* 529 N.W.2d 887 (N.D.1995), but I do not find *Moen* persuasive. In *Moen,* plaintiffs were alleging the fraud of the bank was to misrepresent that it would provide operating loans for the next year's crop. The documents signed by the parties said:

"Lender has not committed, and is not committing at this time, to finance Borrower's next year's farm loan requirements." Although the contract in this case says it may be terminated by either party for any reason, it is silent about the rights of the company to sell its product line. The writing does not contradict the allegations Evenson asserted about Page's promises not to sell the product.

[¶ 29] Assuming Evenson's offered testimony to be true for purposes of deciding the summary judgment motion, it was error for the trial court to decide, as a matter of law, Evenson could not meet his burden of proving the fraud claim.

[¶ 30] CAROL RONNING KAPSNER, J., and JOHN C. McCLINTOCK, D.J., concur.