2012 ND 246

**Paul EHLEN, Plaintiff and Appellant**

v.

**John M. MELVIN and LynnDee Melvin, Defendants and Appellees.**

No. 20120233.

Supreme Court of North Dakota.

Nov. 27, 2012.

Rehearing Denied Dec. 18, 2012.

Roger J. Minch, Fargo, N.D., for plaintiff and appellant.

LaRoy Baird III, Bismarck, N.D., for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Paul Ehlen appeals from a judgment dismissing his action against John M. Melvin and LynnDee Melvin ("Melvins") to enforce a purchase agreement, from a judgment for costs, and from an amended judgment. We affirm, concluding the district court's finding the parties did not mutually consent to the purchase agreement is not clearly erroneous.

I

[¶ 2] The Melvins own real property in McIntosh County. In February 2011, Kevin Schmitz contacted the Melvins and informed them Ehlen was interested in purchasing the property. Schmitz was interested in leasing some property for grazing his cattle, and he planned to lease the property from Ehlen if Ehlen purchased it from the Melvins.

[¶ 3] On February 16, 2011, Ehlen sent the Melvins a document entitled "Purchase Agreement," offering the Melvins $850,000 for the property. The agreement provided the closing of the sale of the property would occur on or before March 1, 2011, and the total amount for the purchase

would be paid on or before the closing date. Ehlen also attached a one-page document entitled "Amendment to Purchase Agreement," which itemized a list of additional terms. Ehlen had signed the documents.

[¶ 4] On February 18, 2011, the Melvins reviewed Ehlen's offer with their attorney. The Melvins modified some of the terms on the agreement, including the correct spelling of LynnDee Melvin's name and the legal description of the property. The Melvins also added multiple terms to the purchase agreement and the amendment, including that the property was being sold "as is," that the mineral rights conveyed by them were limited to only those rights they owned, and that the land was subject to a federal wetland easement and an agricultural lease. The parties had not previously negotiated the added terms. The Melvins hand-wrote all of the changes on the documents they received from Ehlen and they initialed each change. The Melvins signed the documents and sent them back to Ehlen.

[¶ 5] Ehlen did not contact the Melvins after they sent the documents back to him. On February 24, 2011, Schmitz told the Melvins the deal was off and Ehlen was concerned about some of the modified terms. Schmitz contacted the Melvins later and informed them "the deal was back on." The Melvins did not have any contact with Ehlen. The Melvins contacted the title company on March 1, 2011, and learned Ehlen had not paid the money for the property or initialed the amendments the Melvins made. The Melvins' attorney sent Ehlen a letter dated March 2, 2011, to confirm that the "transaction started and contemplated between [Ehlen] and [the Melvins] is hereby terminated."

[¶ 6] Ehlen sued the Melvins to enforce the "Purchase Agreement," alleging it was a binding and enforceable contract. After a court trial, the district court ruled there was no contract, the purchase agreement and the amendment to the purchase agreement constituted an offer to purchase property from the Melvins, the Melvins made a counteroffer in writing, and Ehlen failed to accept the counteroffer. The court ordered the dismissal of Ehlen's claims with prejudice and awarded the Melvins the costs of litigation and attorney fees. A judgment was subsequently entered. The Melvins filed an affidavit for costs and attorney fees and Ehlen objected. The court entered an order awarding the Melvins $2,890.40 in costs but ruled the award of attorney fees in its prior order was in error. A judgment for costs was entered. The court also entered an amended judgment incorporating the changes occurring after the initial judgment.

## II

[¶ 7] Ehlen argues the district court misapplied the law by mischaracterizing the changes the Melvins made to the purchase agreement as a counteroffer requiring a separate acceptance from Ehlen. Ehlen contends the agreement is a valid and binding contract and the Melvins breached the agreement. Ehlen claims he accepted any counteroffer that was made.

[¶ 8] This Court has said the existence of a written contract is not purely a legal question:

[W]hether an unambiguous written agreement constitutes a valid contract is a question of law for the court. However, we have noted that the determination of mutual consent, although resulting in a legal conclusion, necessarily involves factual questions. Thus, the determination of the existence of a contract is a purely legal question only when mutual consent, and the other requisite elements of a contract, are demonstrated

clearly and unambiguously on the face of the written contract.

*Jerry Harmon Motors, Inc. v. First Nat. Bank & Trust Co.*, 472 N.W.2d 748, 752 (N.D.1991) (citations omitted). When the existence of a contract is not purely a legal question, it is a question of fact and the trier of fact determines whether a contract is intended to be a complete, final, and binding agreement. *B.J. Kadrmas, Inc. v. Oxbow Energy, LLC*, 2007 ND 12, ¶ 7, 727 N.W.2d 270. Findings of fact are reviewed under a clearly erroneous standard. *Id.* A finding is clearly erroneous when it is induced by an erroneous view of the law, there is no evidence to support it, or based on the entire record, we are left with a definite and firm conviction a mistake has been made. *Id.* The district court determines credibility issues, and we will not reweigh evidence or reassess credibility, nor do we reexamine findings of fact made upon conflicting evidence. *Id.*

[¶ 9] A party suing for breach of contract has the burden of proving the existence of a contract, breach of the contract, and damages. *Come Big or Stay Home, LLC v. EOG Resources, Inc.*, 2012 ND 91, ¶ 8, 816 N.W.2d 80. "A contract requires parties capable of contracting, consent of the parties, a lawful object, and sufficient consideration." *Stout v. Fisher Indus., Inc.*, 1999 ND 218, ¶ 11, 603 N.W.2d 52; *see also* N.D.C.C. § 9–01–02. Consent must be mutual and it is "not mutual unless the parties all agree upon the same thing in the same sense." N.D.C.C. § 9–03–16. " 'The parties' mutual assent is determined by their objective manifestations, not their secret intentions.' " *B.J. Kadrmas*, 2007 ND 12, ¶ 11, 727 N.W.2d 270 (quoting *Lire, Inc. v. Bob's Pizza Inn Restaurants, Inc.*, 541 N.W.2d 432, 434 (N.D.1995)).

[¶ 10] The acceptance of a contract must comply with the terms of the offer. *Berg v. Lien*, 522 N.W.2d 455, 456 (N.D.1994). The acceptance of a contract must be absolute and unqualified, and a qualified acceptance is a counter proposal. N.D.C.C. § 9–03–21; *see also Berg*, at 456; *Wucherpfennig v. Dooley*, 351 N.W.2d 443, 444 (N.D.1984); *Greenberg v. Stewart*, 236 N.W.2d 862, 868 (N.D.1975). This Court has said:

> It is also equally well established that any counter proposition or any deviation from the terms of the offer contained in the acceptance is deemed to be in effect a rejection, and not binding as an acceptance on the person making the offer, and no contract is made by such qualified acceptance alone. In other words the minds of the parties must meet as to all the terms of the offer and of the acceptance before a valid contract is entered into. It is not enough that there is a concurrence of minds of the price of the real estate offered to be sold.

*Greenberg*, at 868 (quoting *Beiseker v. Amberson*, 17 N.D. 215, 116 N.W. 94 (1908)). In *Stonewood Hotel Corp., Inc. v. Davis Dev., Inc.*, 447 N.W.2d 286, 290 (N.D.1989), this Court further said:

> an acceptance must be absolute and unqualified or at least separable from those parts of the acceptance which are not absolute and unqualified. Thus, not every new proposal constitutes a qualified acceptance or counteroffer. An acceptance is not necessarily invalidated by proposing changes or additions.... An acceptance which requests a change or addition to the terms of the offer is not thereby invalidated unless the acceptance is made to depend on an assent to the changed or added terms.

(citations omitted).

[¶ 11] Here, the "Purchase Agreement" and "Amendment to the Purchase Agreement" the Melvins received

was an offer from Ehlen to purchase the property. Although the Melvins signed the agreement, the district court found the Melvins made substantive changes and additions to the agreement and the parties did not agree upon the essential terms. The evidence supports the court's finding. There was evidence the purchase price was the only term in the agreement the Melvins had approved before they received Ehlen's offer. The Melvins added various terms, including that the property was sold "as is," the mineral rights were limited, the property was subject to a federal wetlands easement and an agricultural lease, and the Melvins wanted to remove some equipment from the property. The Melvins made substantive changes to the agreement before signing it and their acceptance was not unqualified. To form a contract, the offer and acceptance must express assent to the same thing. *Berg*, 522 N.W.2d at 456. "A conditional acceptance is itself a counter offer and rejects the original offer." *Greenberg*, 236 N.W.2d at 868. We conclude the evidence supports the court's finding that the parties did not agree to the essential terms of the agreement and the Melvins' modifications to the agreement constituted a counteroffer.

[¶ 12] Ehlen contends the Melvins accepted the agreement and it is a binding contract because the agreement stated, "THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYERS AND SELLERS." However, the Melvins made material changes and added new terms to the agreement and the parties did not sign the same agreement. The parties must agree on the same thing in the same sense, and the use of the words that a document is "a legally binding contract" does not mean that a contract exists.

[¶ 13] Ehlen also argues he accepted any counteroffer the Melvins made. The district court found Ehlen never accepted the Melvins' counteroffer, and the evidence supports the court's finding. "'It is a general rule of law that silence and inaction, or mere silence or failure to reject an offer when it is made, do not constitute an acceptance of the offer.'" *B.J. Kadrmas*, 2007 ND 12, ¶ 13, 727 N.W.2d 270 (quoting 17A Am.Jur.2d *Contracts* § 103 (1991)). Ehlen did not sign the modified agreement or initial the changes. There was no evidence he complied with the terms of the agreement. There also was evidence the deal was off because Ehlen was concerned about terms of his offer that were modified by the Melvins. The evidence supports the court's finding that Ehlen did not accept the Melvins' counteroffer.

[¶ 14] We conclude the district court's findings of fact are not clearly erroneous and its findings support its conclusions of law.

III

[¶ 15] Ehlen contends the parol evidence rule and the statute of frauds bar the Melvins' argument their changes to the "Purchase Agreement" and the "Amendment to Purchase Agreement" were a counteroffer.

[¶ 16] In *Silbernagel v. Silbernagel*, 2007 ND 124, ¶ 12, 736 N.W.2d 441, we explained the parol evidence rule:

The parol evidence rule is a rule of substantive law and precludes the use of evidence of prior oral negotiations and agreements to vary or add to the terms expressed in the written contract. All preliminary negotiations, conversations, and verbal agreements are merged into and superseded by the subsequent written contract. The rule is founded on experience and public policy, created by necessity, and designed to give certainty

to a transaction that has been reduced to writing by protecting the parties against the doubtful veracity and uncertain memory of interested witnesses.

(quoting *Evenson v. Quantum Indus., Inc.*, 2004 ND 178, ¶ 11, 687 N.W.2d 241). The parol evidence rule does not apply in this case because the proposed modifications to the "Purchase Agreement" and "Amendment to the Purchase Agreement" were in writing and there was not a valid contract.

[¶ 17] Similarly, the statute of frauds does not apply. Section 9–06–04, N.D.C.C., is the statute of frauds provision, and states:

> The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by the party's agent:
>
> ....
>
> 3. An agreement for the leasing for a longer period than one year, or for the sale, of real property, or of an interest therein. Such agreement, if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing subscribed by the party sought to be charged.

Ehlen and the Melvins do not allege that there were additional terms they orally agreed to or that there was an oral agreement for the sale of the property. The Melvins' counteroffer was in writing. There was not a valid contract. The statute of frauds does not apply.

## IV

[¶ 18] The Melvins argue they are entitled to an award of attorney fees as the prevailing party, and the district court erred in reversing its initial decision to award them attorney fees.

[¶ 19] The Melvins did not cross-appeal and a cross-appeal is necessary if the appellee seeks a more favorable result on appeal than it received in the district court. *See Kalvoda v. Bismarck Pub. Sch. Dist.*, 2011 ND 32, ¶ 14, 794 N.W.2d 454; *Hovet v. Hebron Pub. Sch. Dist.*, 419 N.W.2d 189, 193 (N.D.1988). Because the Melvins did not cross-appeal, we will not address this issue.

## V

[¶ 20] We conclude the evidence supports the district court's finding that a contract between Ehlen and the Melvins to purchase the Melvins' real property did not exist. We affirm.

[¶ 21] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.